May it please the court, the issue presented in this appeal is simple, should an accidental death insurance policy be interpreted according to law developed under a treaty governing personal injury suits against airlines or should it be interpreted according to generally recognized principles of insurance law? If it's a former, we lose. This circuit has made crystal clear that death from deep vein thrombosis acquired while sitting on an airplane, which is what happened to Jack Williams here, is not an accident for purposes of determining whether a personal injury suit may proceed against an international airline under the Warsaw Convention. But if it's the latter, then opponents win because the district court did not apply insurance law principles, instead the district court applied legal principles developed under the Warsaw Convention. So why doesn't law under the Warsaw Convention apply? Well for a great many reasons as our brief points out, different purposes, different terms, different public policies, different rules of construction. But most telling of all is how case law under accidental death insurance policies regards Warsaw Convention cases, it utterly ignores them. You can look in vain in all of the insurance treatises, Couch on Insurance, Appleman on Insurance, the Law of Insurance Practice and Litigation and you will not find a single citation to any of the Warsaw Law cases addressing the definition of accident over the past 30 years when the Supreme Court defined accident in not a single case. And you can look through all the decisions under the Warsaw Convention addressing the definition of accident and you'll find not a single citation to any of the many common law cases addressing the definition of accident in the context of accidental death insurance policy. Why should this court follow California's accidental death, accidental means distinction when the federal common law governs in this case? Well the courts have not quite developed that yet. There's some discussion in ERISA cases outside the Ninth Circuit that say that the distinction is irrelevant. California courts in, if you read the Wheel decision and the Olson decision, there's extensive analysis about accidental means and accidental death. What the courts are getting at there and of course what even the California courts say about this is that accidental means has to be, is narrowly defined and it has to be said as accidental means in the policy and we don't have that here. Why don't we? Why isn't this, why, if we had to apply that distinction, why couldn't this fairly and easily be read as an accidental means provision, not an accidental death provision? I mean it does talk, it does talk, it does have what is really language of causation and it talks about an external event, if you will, that is the cause of the death. That sounds like something very close to an accidental means policy, isn't it? Well, it may be close. The California courts are clear though that you have to say that explicitly. You have to use the word means. And even if you did use the word, I mean just so we're clear with the difference between a means policy and an accidental death policy is that under accidental means policy, the policy says we promise to pay you benefits if your death is caused by means of your, the activity that you're engaged in, you die. So for example in the Wheel case you had a cocaine overdose and that was an accidental means policy. And so the decedent in that case died by means of using cocaine. So the court said, well that's not covered, you have to die by some cause other than that. In accidental death cases you don't get into that. So like the Olson case is an accidental death case and it was somebody who died by being intoxicated while in a hot tub. And while the court found that exclusions applied, the threshold issue was, was there an accidental death? And the court said there was because he never intended to die by getting drunk and sitting in a hot tub. So with that distinction here, it really doesn't matter because as we pointed out, the definition of an accident morphs over different facts and circumstances. And what's fundamental in all accidental cases is you have to have two things. You have to have something that's unintended and unanticipated. And second, you have to have some kind of cause that's externally injured. Well there was nothing unintended or unanticipated that was external to him that occurred. This was an ordinary flight, nothing unusual happened. The only thing unusual was, very much regrettably, is that your client had apparently sat for a very long period of time through these many hours of flight, perhaps without properly liquefying himself, and that appears to have led to this tragic death. But none of that, well I guess let me pose the question, what about that is external to him that is unintended and unanticipated? And your honor, two things, and you're exactly right on that, with this exception. We look at what's unintended and what's unanticipated, and then we look at what's external. What we don't look at, unless you want to follow the SACS line of cases, we don't look at what happened in the ordinary, usual course of the operation of the aircraft. If you import that definition into insurance law standards, then you've opened up Pandora's box. Because now, you know, when somebody veers off the road and crashes into a tree, you've got to ask, gee, was the car operating in its ordinary, usual operation? And you can bet the insurance industry is going to want to glom onto that standard and figure out how to deny policies because of something else. And the folks at Appleman and Couch are going to figure out, what do we do now? Because now we have a standard that doesn't exist in accident insurance law. So the issue is externality, and the issue here is, did it come within or did it come from without? Right, and so how did it, how was it, what was it and how was it external? According to the World Health Organization, which published a warning about this, it happens by sitting in an airline seat too long, not being hydrated enough, taking lots of long flights or being on a long flight. What's external to him that's causing the accident? Sitting in the seat for a prolonged period of time. But that's him, that's not external to him. It is external to him. If he were sitting at, if he were at home and developed a blood clot, we could say that's internal. But he, because blood clots happen both by internal means and external means. But here we have a coroner who says that his cause of death was linked to external cause, an external setting. It didn't just happen on its own, it happened through something outside of him. And the courts are very broad about this. That's why if we look at this under accident insurance law, it's a no-brainer. It's an easy case because the standards for accidental death are easy there. Why doesn't Air France provide persuasive guidance to us on this? Air France actually provides zero guidance to us on this. There you have a court that's looking at how to interpret a treaty under French, British, German, English law. And it construes the provisions between the two, two different provisions in there. There's a lengthy analysis. And then at the end, you even have the court saying, you know, there are lots of different ways we could apply the definition of accident. And once we start distinguishing between the cause and the result, we're stepping into the surveillance box. Just, I guess, to again follow up on Judge Wardlaw's question, I mean, how is his decision to sit for a very long period of time without proper hydration, how is that decision, even though you might characterize it, the sitting as external, how is that, to use the language of the policy, unintended and unanticipated? How are his own decisions to conduct himself in this way over these long flights? How can you characterize that as unintended and unanticipated? And that, Your Honor, is exactly the core here. Did he intend to die? Did he intend to get DVT by sitting in the airline seat? Of course not. Of course not. In which case, that's why it's an easy issue. His death was not intended and it was unanticipated. You know, if he were doing a circus act and decided to constrict himself in some way, then you'd have an issue about whether there's some intentionality about engaging in this, but any more than you would have with the mountain climber who's, you know, climbing Mount Kilimanjaro and dies because of high altitude sickness. And that issue, in that case, that this circuit addressed was, is that an unintended, unanticipated harm that arises? And the court said, well, it's not. You can climb, you know, nobody expects to die when they're climbing, you know, Mount Kilimanjaro or Mount Everest. And so you separate that and you look then, the next issue is- Well, you seem to be saying that the accident is his death. Is that right? Is that what you're saying? Yes. Well, then how is that, by the language of policy, the accident has to be external to the body. His death is not an accident that is external to the body. You seem to be conflating an awful lot here. Well, not under accident insurance law, which the district court did not address. But if you look at accident insurance law, it is external. Too much sun, too much x-ray, too much cold. How do you distinguish this from our case in Katcharian, under California insurance law, that a stroke could not be an accidental death? How is DVT distinguishable from a stroke? Great question, because in that case, there was zero evidence of externality. A stroke happened, and we don't know the cause of it. It could have been a job. It could have been a judge. I don't know. But the point is that in that case, there was zero evidence of any external cause. And the court said, well, it was unanticipated, and it was unintended, but there's just no basis of external. But in this case, you get DVT two ways, by not doing something and by doing something. In this case, he was doing something. He was riding on a plane for too long. The World Health Organization publishes warnings against that. He died by Newtonian forces, shall we say, and lack of hydration. But that occurred. Is there arguing that the pressure from the cabin was external to him? In the Sachs case? Well, in your case. In your case. Oh, our case doesn't argue anything about the pressure in the cabin. We wouldn't make that argument at all. It's just confined sitting. Well, we don't know. What we know is that he died of DVT, and the coroner says, and other scientific authorities say, that you get DVT when you did what he just did, fly for 25 hours over three or four days. Are you aware of a single insurance case that holds that DVT is an accident? Two cases. One unpublished, one published. The McAuley case in Missouri, the Appledorn case in North Dakota, and both of those cases, I will emphatically submit, are wrongly decided because they're decided exclusively under the Sachs line of cases. And they are true aberrations under insurance law. As I said, you know, you can search all you want in Couch and in Appleman, and you're not going to find a single reference to, you know, what accident is under the Sachs case. And conversely, when you look at Sachs cases, including this circuit's development of Sachs line cases. So did you just give me two cases where they held under insurance law that a death from DVT was an accident? No. Okay, are you aware of any that have held that? Zero. Under insurance law? Under insurance law, none. Okay, all right, you're over your time. I'm sorry, thank you. Good morning. May it please the court, my name is Sherry Suica. I'm here on behalf of the Applee National Union Fire Insurance Company of Pittsburgh. One of the things that I would like to emphasize today is that we are not asking this court to deviate from ERISA law at all. We are asking this court to apply ERISA law as opposed to state insurance law. Under ERISA law, the court is to interpret the plan as it would any other contract, and to use in that interpretation that the way that the standard is that the words are to be construed in a way an ordinary, in the ordinary and popular sense, in the same manner as a person of average intelligence and average experience. That's what we're asking the court to do here. Now, there haven't been, as Mr. Schoenfeld just mentioned, there haven't been any cases that have applied the standard to DVT as the injury, except for a handful of district court cases which he disagrees with. And because of that, that is why this court's Rodriguez case is helpful. Rodriguez applied the FAC standard to DVT on an airplane, which was routine. There's nothing, you know, it was uneventful routine flight. And in applying that, the court held that DVT was not an accident. Counsel, are you, since you're asking us to apply how the average intelligent ordinary person would read this policy, are you, are you to this extent agreeing with opposing counsel that the Warsaw Convention cases would seem to deal with a very different problem? They're not really relevant to our assessment of this case. Do you agree with that? I don't. It's relevant because... Well, it's a completely different context. Well, why would we import that type of analysis into how you read this insurance policy and the way you're suggesting this should be read? Because both lines of authority deal with contract interpretation, plain and simple. And the language that the U.S. Supreme Court was addressing in the Warsaw Convention is very similar to the language and the policy at issue here. And then what this court did in Rodriguez... The issues there are airline liability. They're not how an insurer should get benefits under a private policy. It's a very different, very different context. I agree with that. That's a different type of claim, but it's not a different type of context. What, for example, Ms. Rodriguez had to show when she was suing the airline for... That was the Warsaw Convention case. So let's be clear because I'm not convinced that the Warsaw Convention cases are applicable. Let me help convince you that. Why do you need it? Yeah, why do you need to? What other authority can we look to? Well, you don't need to. I mean, you could just do a regular contract interpretation. And even under those principles, there's nothing external that happened to cause Mr. Williams' injury. I mean, you could decide the case just on that. I mean, I think that Rodriguez... How about the California standard? Because they have accidental means, accidental death distinction, where the policy fails to use the term means. I mean, why shouldn't we apply that? Because under ERISA standards, we don't incorporate state insurance law into the federal common law. And the reason it's especially highlighted here is because, as Mr. Schoenfeld pointed out, under California state law, the contract language really doesn't matter if the word means is not in that language. And if the word means is not there, you ignore all of the other contract language. And that's contrary to ERISA principles, which is to construe the contract under no special way, just using standard contract interpretation principles. And if we were to incorporate this California standard where the word means has to be in there, it would ignore a lot of the language that's included in this policy, which does focus on causation. And under ERISA standards, we're not to interpret the plans in a manner that would make words in the policy superfluous or meaningless. And that's exactly what the California standard would do here. But the term accident is widely considered ambiguous. I mean, why shouldn't the court construe the ambiguity against the insurer? Well, under those circumstances, then every accidental death and dismemberment policy would be ambiguous, and you'd get benefits every single time. And so I don't think, just because we could sit here and debate what does the word accident mean under context, we have legal principles that help define that term. And here, we have language that says there has to be a certain causation that's external to Mr. Williams' body. And that's how we define that. And that external event has to be unintended and unanticipated. Doesn't this suggest that the policy should have set forth a definition for it? I would say they all should, but a lot of them don't, which is why we have this body of law. But that doesn't mean that you can't define the term with the other language in the policy and under the context. I mean, that is exactly what the body of case law does, is to construe that term. So why don't you respond, I guess, in the same way as Mr. Shanifel said? Why wasn't this external and accidental? Well, you know, I've given that a great deal of thought, because his argument is that sitting is external. And I quite really, I don't understand that, except the best thing I could come up with is that gravity is a force that is external, and you need gravity to sit, but you also need gravity to stand. I mean, I don't think a person of average intelligence and experience would say that I'm being subject to an accident right now by standing here and talking to you, which is really what that argument means, by saying that sitting is external just because gravity is exerting a force on you. It's just contrary to what an average person would say. And the same goes for external. It's not external. It's something a person does. Well, the pressure that, well, let me ask, is there any evidence as to what kind of, was he sitting in first class? Was it business class? Was it just an ordinary economy class seat? I mean, we all know from our own experiences that there are a lot of differences in the sitting in economy class, business, or first class. Does the record contain any evidence about what kind of seat he was sitting in? It's inconclusive, but I would say it doesn't matter, because even if Mr. Williams were in the absolute worst seat on the plane, and even if you can say that sitting is external, it's still not accidental. It is, right? Sitting, that is external, and the effect that the long period of sitting in an airplane seat is having on you, that's the interaction between the external condition of sitting and what it's doing internally to your body. I mean, that is an external force on the body, is it not? I would disagree with that for the reasons I just explained, but even if you were to accept that, I still think we win, and that's because those external forces of sitting in a cramped seat are not unintended. It's not an accident. He intended to take that flight, and if we were to say that that's external, and I mean, you would have to make the same conclusion for a person who chooses to sit in their home watching TV. What if this was a slightly different case? What if there was evidence that a mean stewardess forced him to stay seated on the flight, and he wanted to get up, and he wasn't able to get up, and she forced him to sit down, because sometimes the stewardesses just decide they don't want anybody walking around, even on long flights. Would that be a different case? I think it would be a very different case. I think that is definitely something external, and I don't think that would be any cause for dispute on that, and it's something that certainly Mr. Williams didn't intend or expect. It would be a very different case, if that's what causes injury. What do we have in terms of the facts? Like, was it just sitting alone? I mean, sitting in and of itself for a long time. There's no other circumstances in this case? Correct. I mean, what the coroner's report said was there's an assumption that the prolonged sitting from his extensive air travel, perhaps a lack of hydration, and perhaps disease or genetic factors could have taken a play here, and it was inconclusive. And are there any cases outside of the Warsaw Convention context that deal with DVT on an airplane, and as to whether or not it's an accident? District court cases, yes. Those were cited in our brief. Okay, and they did apply the Warsaw standard. That's the problem. I'm having a problem with the definition. I mean, the policy makes no reference to the Warsaw standard for accident. Right. When you think about it, and I understand that hesitation, but when you think about it this way, that, you know, what Ms. Rodriguez had to show in order to prevail in her case against the airline under the Warsaw Convention, she had to show that an otherwise uneventful flight, that her prolonged sitting was the result of an unintended, unexpected accident external to her body. And under our policy language, that is exactly what the appellants have to show here, that Mr. Williams was subject to an external event that was unintended and unanticipated, which caused his injury. And what he alleges here is just the sitting alone did that. And this court considered the same exact circumstances, albeit under a different law. And under that law, the court said DVT is not external. And I would say that if the court were to decide the case in favor of appellants, that somehow it needs to be explained why DVT would be internal when you're suing an airline, but it would be external when you're suing an insurer. To me, I don't think it's a big enough, it's a distinction without a difference in my mind. Thank you, counsel. Thank you. Did you have time? No, were you, one minute? Okay, you can have a minute. Very briefly, question, why not external? Why would thin air on a high mountain not be external? That works. That's accidental death externality under an accidental death insurance policy. Judge, you asked about how he was sitting, whether there's evidence in the record. There isn't, but it doesn't matter for this case because AIG did not deny his claim based on how he was sitting in the airplane. They just said this was something you acquired internally and it was not an accident in the usual operation of the aircraft, which is the Warsaw standard, which shouldn't apply. If you don't apply that standard, then I think we have a different result. The counsel said, and forgive me for making, we have to pay attention to details in language. Counsel just suggests to you that the standard in the Warsaw Convention is the same because you have to show an external event that causes death. Shepherdize that. You won't find an insurance case that uses that language, an external event that causes death. The courts don't look at it that way under accidental death insurance. What they do is they look at whether the cause of death is external. If you want to get into a tent and so forth, that's where you get the cause of death is external. In this case, we submit. Not to prolong, but just please try to explain to me once again how there was an unintended, unanticipated accident that was external to the body. Focus on unintended and unanticipated. What was unintended or unanticipated about this external cause? He never intended to get DVT by sitting in the airplane. It was unanticipated to him that he would get DVT by sitting in the airplane, period, under accident insurance law. All right. Williams v. National Union will be
judges: Lipez, Wardlaw, Murguia